IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ADOLPHUS JUNIOR NICKLEBERRY,<br><br>Defendant. | Case No. 2:15-CR-00536-JNP<br><br>MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS<br><br>District Judge Jill N. Parrish |

**INTRODUCTION**

Defendant Adolphus Nickleberry filed a Motion to Suppress on November 12, 2015. (Docket 18). The court held an evidentiary hearing on November 30, 2015. The parties then briefed the motion and the court heard oral argument on January 13, 2016. Subsequently, while conducting its own research, the court located the recent Tenth Circuit case, *United States v. Sanders*, 796 F.3d 1241 (10th Cir. 2015), which details the Fourth Amendment requirements for impounding vehicles located on private property. Because the memoranda filed by the parties failed to address that case, the court ordered supplemental briefing that was received on February 5, 2015. After careful consideration of the record, relevant law, and the parties' memoranda, the court GRANTS Mr. Nickleberry's motion to suppress for the reasons set forth below.

As a preliminary matter, the court expresses concern about the memoranda submitted by the United States. First, the United States failed to disclose controlling law directly adverse to its position. In its supplemental memorandum addressing *Sanders*, the United States asserted: "In preparing the original Response, counsel for the United States reviewed *United States v. Sanders*, for general legal principles on impoundments, but did not cite the case because its facts are far

different from the case at bar." As explained below, *Sanders* constitutes controlling law in this matter. Even if *Sanders* were distinguishable on the facts as the United States suggests, counsel still had a duty to disclose the case to the court. *See* Utah Rules of Prof'l Conduct 3.3(a)(2).

Second, in its Response to Defendant's Motion to Suppress (Docket 29), the United States cites *United States v. Clasen*, 156 F.3d 1244 (10th Cir. 1998) (unpublished table decision). But the United States does not disclose in its Response, however, that *Clasen* is an unpublished opinion and thus is not binding authority. Indeed, the United States only revealed that *Clasen* is unpublished after the court requested supplemental briefing. *See* D. Utah Civ. R. 7-2(b).

Finally, in its supplemental memorandum, the United States cites *United States v. Ruby-Burrow* for the proposition that the Utah impoundment statute applies to cars that turn off a public highway into a private parking lot. No. 2:15-cv-92-DB, 2015 WL 9165901 (D. Utah Dec. 16, 2015). In describing the facts of that case, the United States stated that after a traffic accident, a Utah State trooper "arranged to move everyone in the accident to a staging location." It continued, "[d]espite the fact that the vehicle was no longer on a public highway and had been moved to a staging location at the request of the trooper, Judge Benson held 'Trooper Harris' actions were reasonable and appropriate under the circumstances.'" What the United States did not disclose, however, is the fact that the "staging location" was not a *private* parking lot, but rather the public parking lot of a Utah Highway Patrol office.

The court hopes these deficiencies were unintentional. In the future, counsel for the United States should carefully consider the representations it makes to the court and properly disclose controlling law, even though it may be unfavorable to its position.

## FINDINGS OF FACT

Based upon a review of the record and the evidence presented during the evidentiary hearing, the court makes the following factual findings:

Around 1:00 AM on July 31, 2015, Sergeant Ikemiyashiro was in an unmarked police vehicle driving on North Temple in Salt Lake City. He observed a 2005 Chrysler Sebring pass him on the road. Although Sergeant Ikemiyashiro had not observed the Sebring commit any traffic violation, he ran a search of the Sebring's license plates in the UCJIS system. This system contains information including driver's license status, motor vehicle registration, insurance status, and arrest warrants. Sergeant Ikemiyashiro discovered through UCJIS that the Sebring had no insurance and that the car's owner, Ms. Bateman, had a warrant for her arrest.

Sergeant Ikemiyashiro followed the car into an Econo Lodge parking lot where it had pulled into a parking stall. He then activated his lights, stepped out of his vehicle, and approached the driver's side of the Sebring. The driver identified herself as Jennifer Bateman, the registered owner of the car. She handed Sergeant Ikemiyashiro a suspended Utah driver's license and admitted that her vehicle was not insured.

Sergeant Ikemiyashiro then decided to impound the car. He called for backup to assist with the impoundment and accompanying inventory search. While waiting for the backup, Sergeant Ikemiyashiro asked Ms. Bateman to step out of the car and speak to him separate from her passenger, Mr. Nickleberry. Sergeant Ikemiyashiro told Ms. Bateman that because her car was not insured, he was impounding it and conducting an inventory search. He then asked for the name of the passenger in the front seat. She replied that his name was Adolphus Nickleberry. Ms. Bateman's daughter, who was less than one-year-old at the time, was also in the vehicle.

While still waiting for the backup needed to impound the car, Sergeant Ikemiyashiro searched the UCJIS system using Mr. Nickleberry's name. Sergeant Ikemiyashiro discovered that Mr. Nickleberry had seven or eight active warrants for his arrest. Sergeant Ikemiyashiro waited for his backup, Detective Pender, to arrive.

After Detective Pender arrived at the scene, Sergeant Ikemiyashiro approached the passenger side of the Sebring. He identified himself to Mr. Nickleberry. He also informed Mr. Nickleberry that he was going to search the car and asked Mr. Nickleberry to step out of the car. Sergeant Ikemiyashiro then asked if there was anything in the car that could cut or hurt anyone. Mr. Nickleberry responded that his friend left a gun in the car.

Sergeant Ikemiyashiro placed Mr. Nickleberry under arrest without incident and conducted a search of Mr. Nickleberry's person. Sergeant Ikemiyashiro found a glass pipe with a burnt residue consistent with a crack pipe. Sergeant Ikemiyashiro and Detective Pender then conducted an inventory search of the car pursuant to Unified Police Department impound procedures. They collected three cell phones and a digital scale. They also found a black semi-automatic .380 handgun under the passenger seat. Detective Pender completed the state impound report.

Sergeant Ikemiyashiro then conducted a recorded interview with Mr. Nickleberry. After receiving *Miranda* warnings, Mr. Nickleberry waived his right against self-incrimination and admitted that he had used Ms. Bateman's vehicle since July 29. Mr. Nickleberry claimed that earlier in the day he had used Ms. Bateman's car to give a friend a ride, and that his friend left the firearm in the car. Mr. Nickleberry was able to correctly identify the firearm and admitted he had handled the gun. Sergeant Ikemiyashiro asked Mr. Nickleberry why he, as a convicted felon, would handle a firearm. Mr. Nickleberry said he had been stupid and would "just have to deal with it." Sergeant Ikemiyashiro asked Mr. Nickleberry the name of his friend. Mr. Nickleberry responded that the officer could just charge him for possession of the firearm because he was not going to "snitch."

Even though Ms. Bateman also had an outstanding warrant, at no point during this

recorded interview was anything mentioned by Sergeant Ikemiyashiro or Mr. Nickleberry about Ms. Bateman being arrested or her baby being placed in state custody. Nor did Sergeant Ikemiyashiro make any threats to Mr. Nickleberry about arresting Ms. Bateman or the state taking custody of her child.

## CONCLUSIONS OF LAW

Mr. Nickleberry asserts three distinct grounds for suppression. First, he claims that his detention was prolonged in violation of his Fourth Amendment rights while Ms. Bateman's car was illegally impounded. Second, he claims that Sergeant Ikemiyashiro's search of the UCJIS database violated the Fourth Amendment because Utah law prohibited accessing those records except under specified circumstances not present in this case. Finally, Mr. Nickleberry contends that his subsequent confession was involuntary and coerced. Because the court holds that the impoundment of Ms. Bateman's car was illegal, it need not address Mr. Nickleberry's second and third grounds for suppression.

Mr. Nickleberry argues that the police officers illegally impounded Ms. Bateman's car and thus unlawfully prolonged his detention as they made arrangements for the impoundment. To determine whether the detention was illegally prolonged, the court must consider first whether the impoundment was illegal and, if so, whether the illegal impoundment prolonged the detention.

A.    Sergeant Ikemiyashiro's impoundment of Ms. Bateman's car was illegal.

The government bears the burden of proving that its impoundment of a vehicle without a warrant satisfied the Fourth Amendment. *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir. 1992). In *United States v. Sanders*, the Tenth Circuit articulated the law governing impoundments of vehicles on private property. 796 F.3d 1241. It held "that impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent

threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale." *Id.* at 1248.

Although the United States does not dispute that Ms. Bateman's car was located on private property when it was impounded, it contends that the facts of *Sanders* are so "substantially different" from the case at bar that the rule articulated in *Sanders* is inapplicable. Specifically, the United States argues that, unlike the case at bar, the defendant in *Sanders* was arrested coming out of a store and her arrest was unrelated to the operation of her vehicle. Additionally, unlike the case at bar, there was no evidence that the impounded car in *Sanders* was involved in any criminal activity.

But the United States fails to explain why these factual distinctions render the *Sanders* holding inapplicable. The express holding in *Sanders* applies to all warrantless impoundments of vehicles located on private property. In this case, it is undisputed that the police had no warrant to seize Ms. Bateman's car. It is also undisputed that, at the time of the impound, the vehicle was located on private property. Thus *Sanders* is controlling.

The United States next argues that the rule articulated in *Sanders* justified the impoundment in this case. It asserts that the impoundment was justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale. For the standardized policy, the United States points to a Utah statute that provides:

> [A]ny peace officer without a warrant, shall seize and take possession of any vehicle that is being operated on a highway without owner's or operator's security in effect for the vehicle . . . unless the division or any peace officer makes a reasonable determination that: (i) the seizure of the vehicle would present a public safety concern . . . or (ii) the impoundment of the vehicle would prevent the . . . peace officer from addressing other public safety concerns.

Utah Code Ann. § 41-1a-1101(2)(a). In response, Mr. Nickleberry contends that because Ms. Bateman had pulled into the private parking lot prior to the stop, the car was no longer "being

operated on a highway" within the meaning of the statute.

The United States argues that the statute should be interpreted to allow seizure of uninsured vehicles that *were* being operated on a highway regardless of where the stop and impoundment actually occur. This position, however, has two potential defects. First, it is contrary to the plain statutory language. Second, it may be unconstitutional under *Sanders*.

The state statute states that the police shall seize uninsured vehicles that are "being operated on a highway." *Id.* An empty vehicle that is parked in a motel parking lot is not "being operated on a highway." Indeed, the statute defines "operate" as "to drive or be in actual physical control of a vehicle." Utah Code Ann. § 41-1a-102(37).[1] Thus, when Ms. Bateman entered the motel parking lot and pulled into a parking stall, her car was no longer "being operated on a highway."

In addition to being contrary to the plain statutory language, the United States' interpretation is potentially unconstitutional. Under its interpretation, all police officers are *required* to impound all uninsured vehicles that are driven from a highway onto private property—even when there is no legitimate community-caretaking rationale. This policy would likely be subject to a constitutional challenge based on *Sanders*' holding that the Fourth Amendment requires a legitimate community-caretaking rationale before police may impound vehicles on private property.

In the case at bar, however, the court need not reach the statutory interpretation question because the United States has failed to prove that the impoundment of Ms. Bateman's car was justified by a reasonable, non-pretextual community-caretaking rationale. In *Sanders*, the Tenth Circuit provided a "non-exclusive list of factors" that courts should consider in determining

---

[1] The court notes that the statutory definition of "operate" leads to an absurd result under the plain language of the statute. It is impossible for police to "seize and take possession of" a vehicle that is currently being operated (i.e. driven) on a highway.

"whether an impoundment is justified by a reasonable and legitimate, non-pretextual community-caretaking rationale." Those factors are:

> (1) whether the vehicle is on public or private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle); (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver consented to the impoundment.

*Sanders*, 796 F.3d at 1250. The court will consider each factor in turn and will then consider two additional factors proposed by the United States.

First, it is undisputed that Ms. Bateman's vehicle was on private property at the time it was impounded. Nevertheless, the United States argues that this factor still weighs in its favor. It notes that immediately before pulling into the parking lot, "Ms. Bateman was observed illegally operating her car on a public highway without a license and without insurance." But according to Sergeant Ikemiyashiro, he neither initiated the traffic stop nor impounded the vehicle until after Ms. Bateman had pulled into the private parking lot and parked. This factor therefore weighs in Mr. Nickleberry's favor.

Second, there is no evidence that the property owner was consulted. The United States argues that because the stop occurred after 1:00 AM, "it is unlikely that the motel owner could have been reached." It does not, however, point to any evidence in the record to substantiate that claim.[2] Without any evidence that Sergeant Ikemiyashiro attempted to contact the owner or manager of the motel, this factor weighs in favor of Mr. Nickleberry.

Third, the United States has provided no evidence to suggest that there was no alternative to the impoundment of Ms. Bateman's car. It argues only that "[b]ecuase the car was not

---

[2] Many motels have mechanisms for afterhours contact and the United States offers no explanation as to why the officer did not attempt to make contact or why the impoundment could not have waited until the morning. The United States also provided no explanation as to why there was an exigent need to immediately impound the vehicle, given that it was parked in one of the motel's parking stalls and not impeding traffic.

lawfully insured, no one could have legally driven the car off the motel parking lot." It also asserts that Ms. Bateman did not stay at the motel and "[t]here was no reason to believe she would be able to obtain proper insurance and return anytime soon to lawfully remove the car." But none of these arguments are supported by evidence in the record. There is no evidence that Ms. Bateman would have been unable to arrange to have the car towed or to have arranged to leave the car temporarily in the Econo Lodge parking lot. Likewise, there was no evidence that Sergeant Ikemiyashiro considered whether Ms. Bateman could have obtained insurance or made alternative arrangements for the car within a reasonable time. Given the lack of evidence on this factor, it weighs in favor of Mr. Nickleberry.

Fourth, the car was tangentially implicated in a crime. Ms. Bateman had illegally driven her uninsured car without a valid license. But the car was not necessary to prove that Ms. Bateman committed those crimes. Likewise, there was no reason to believe that the car itself contained any evidence of those crimes. Accordingly, this factor weighs only slightly in favor of the United States.

Fifth, there is no evidence that Ms. Bateman consented to the impoundment. There was no testimony presented on whether Ms. Bateman consented to the impoundment or whether Sergeant Ikemiyashiro asked for her consent. Accordingly, this factor weighs in favor of Mr. Nickleberry.

The United States also asserts two other alleged community-caretaking justifications for the impoundment. First, it asserts that "leaving the vehicle in place could also have subjected it to vandalism and/or theft as valuables were in plain view." Next, it states that Sergeant Ikemiyashiro chose to impound the car "because it was operating without insurance," which is directly associated with the purpose for the stop. Neither of these justifications is persuasive.

The evidence does not support the United States' assertion that there were valuables in plain view. During the evidentiary hearing, counsel for the United States asked whether Sergeant Ikemiyashiro "could see any valuables in plain view in the vehicle." Sergeant Ikemiyashiro responded that he could see "items for a baby" such as a "stroller, miscellaneous clothing, clothing for a baby, baby wipes, [and] those type of things." None of these items are so valuable as to require the police to impound the car to keep them safe. Similarly, Sergeant Ikemiyashiro never testified that he believed the vehicle could be subject to vandalism if left in the motel parking lot. The court agrees with the Seventh Circuit that "[t]he suggestion that the police were obliged to impound the vehicle 'to protect it' from theft or vandalism[] strikes us as making up new police obligations after the fact where none existed before." *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996).

The final justification offered by the United States is that preventing Ms. Bateman from driving her uninsured car was a legitimate community-caretaking rationale. The United States argues: "Sergeant Ikemiyashiro stopped Ms. Bateman's car because it was operating without insurance. He made the decision to impound the car for the same reason." Assuming that preventing Ms. Bateman from continuing to drive her uninsured car is a possible legitimate community-caretaking rationale,[3] the Fourth Amendment still requires consideration of the other *Sanders* factors. Indeed, the United States' position in this case—that police are automatically entitled to impound without a warrant any uninsured vehicle that has been on a public highway—would read the *Sanders* factors out of existence. Under that view, police officers would never need a warrant to seize uninsured cars on parked private property so long as they

---

[3]  There appears to be no Tenth Circuit case on point. However, mere speculation that an individual might commit future violations and thereby endanger the public may not be sufficiently "divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute," to constitute a community-caretaking rationale under Supreme Court precedent. *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).

had been driven on a public highway, without regard to any possible alternatives to impoundment.

In this case, there is no evidence suggesting that the officer considered any alternatives to impoundment or that no reasonable alternatives existed. One alternative for preventing Ms. Bateman from driving the car without insurance would have been to arrest her based on her outstanding arrest warrant. But under *Arizona v. Gant*, the mere fact that she was arrested would not have given the police the right to search her vehicle without a warrant. 556 U.S. 332, 351 (2009). Regardless, the police did not arrest her. Thus, law enforcement's claim that they were entitled to seize and search her car without a warrant in order to prevent any possible future instances of driving without insurance smacks of pretext and is insufficient to overcome the warrant requirement of the Fourth Amendment.

After considering the *Sanders* factors and the additional justifications offered by the United States, the court concludes that the impoundment was not justified by a legitimate, community-caretaking rationale. Accordingly, the court holds that the United States failed to meet its burden to prove that the impoundment was constitutional.

B.    Mr. Nickleberry's detention was illegally prolonged while Sergeant Ikemiyashiro impounded Ms. Bateman's car.

The evidentiary record demonstrates that the impoundment of Ms. Bateman's car illegally prolonged Mr. Nickleberry's detention. The United States does not dispute that Mr. Nickleberry was detained, within the meaning of the Fourth Amendment, during the entire duration of the traffic stop. Accordingly, the court need only determine whether the illegal impoundment prolonged the stop.

A traffic stop "is a seizure within the meaning of the Fourth Amendment." *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995). However, authority for the seizure "ends

when tasks tied to the traffic infraction are—or reasonably should have been—completed."

*Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015). A traffic stop that is prolonged beyond

that point is unlawful. *Id.* at 1616.

In this case, it is clear that the illegal impoundment prolonged Mr. Nickleberry's

detention. In fact, the United States admits that Ms. Bateman was asked about Mr. Nickleberry

while Sergeant Ikemiyashiro was "waiting for the backup he needed to impound the [car]." It

was then that he "input Mr. Nickleberry's name into the UCJIS system and discovered the

warrants." When backup arrived, Sergeant Ikemiyashiro asked Mr. Nickleberry to step out of the

car and told him that the car would be impounded and searched. Sergeant Ikemiyashiro then

asked whether there was anything in the car that could hurt anyone. It was in response to that

question that Mr. Nickleberry revealed there was a gun in the car. All of these events occurred

because of the illegal impoundment. Thus, the officer illegally prolonged Mr. Nickleberry's

detention.

## CONCLUSION

Sergeant Ikemiyashiro illegally impounded Ms. Bateman's car and illegally prolonged

Mr. Nickleberry's detention. Accordingly, for the reasons stated herein, Mr. Nickleberry's

Motion to Suppress is GRANTED.

DATED February 29, 2016.

Judge Jill N. Parrish
United States District Court Judge